# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KRYSTAL L. COX, ) | |
| ) | |
|       **Plaintiff,** ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 17-2556-JWL |
| NANCY A. BERRYHILL, ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
|       **Defendant.** ) | |
| _____) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding that the ALJ inadequately explained and evaluated Dr. Kresser's and Dr. Sheehan's opinions that Plaintiff could work in a low stress environment, the court ORDERS that the final decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this decision.

**I.    Background**

Plaintiff argues that the Administrative Law Judge (ALJ) failed to perform a function-by-function assessment of her capabilities as required by Social Security Ruling

(SSR) 96-8p, that both the physical and mental limitations assessed by the ALJ are not supported by substantial record evidence, and that the ALJ erred in relying on the vocational expert's testimony at step five of the sequential evaluation process. She seeks remand "with directions to the Commissioner to grant her claims for disability insurance benefits." (Pl. Br. 32).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the

[Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational

3

factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Although Plaintiff seeks remand for an immediate award of benefits, she provided no legal authority for that argument and did not develop it in her Brief. Wall, 561 F.3d at 1066 (issue presented without developed argumentation is waived). Plaintiff has waived consideration of this issue by failing to develop any argument regarding it. Franklin Sav. Corp. v. U.S., 180 F.3d 1124, 1128 n.6 (10th Cir. 1999) (arguments presented superficially are waived) (citing Sports Racing Servs., Inc. v. Sports Car Club of America, Inc. 131 F.3d 874, 880 (10th Cir. 1997) (dismissing claims never developed, with virtually no argument presented)). The court understands that there are (rare) circumstances in which it is appropriate to remand for an immediate award of benefits, but it is up to Plaintiff to cite the authority for such a result and to explain why this case meets the criteria justifying that result. She has not done so.

The court addresses the remaining alleged errors in the order addressed in Plaintiff's Brief, but because it finds that the ALJ erred in evaluating Plaintiff's mental impairments and it may not provide advisory opinions, it will not discuss her arguments

4

regarding physical impairments or step five errors. She may make arguments regarding these alleged errors on remand if she desires.

## II.     Function-by-Function Assessment

As Plaintiff suggests, the Commissioner issued SSR 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits." West's Soc. Sec. Reporting Serv., Rulings 143 (Supp. 2017). The ruling explains that assessment of RFC involves a function-by-function consideration of each work-related ability <u>before</u> expressing the RFC in terms of the exertional categories of "sedentary," "light," and so forth. <u>Id.</u> at 143, 145-46. Failure to perform a function-by-function assessment may result in an improper finding at step four regarding plaintiff's ability to perform her past relevant work as she actually performed it. <u>Id.</u> Moreover, because certain occupations do not require the capacity to meet all the strength demands of the full range of work in a particular exertional category, a failure to do a function-by-function assessment may result in improper findings at step four regarding Plaintiff's ability to perform her past relevant work as it is generally performed in the national economy or at step five regarding Plaintiff's ability to perform other work in the national economy. <u>Id.</u> at 145-46 (also see examples 1-3, p. 146).

The Commissioner argues that the Tenth Circuit has already answered this question, and has held that an ALJ is not "required to separately discuss and make findings regarding her abilities to sit, stand, walk, lift, carry, push, or pull." (Comm'r Br. 6) (quoting <u>Hendron v. Colvin</u>, 767 F.3d 951, 956-57 (10th Cir. 2014)). She argues that

5

the ALJ appropriately limited Plaintiff to the functions required by sedentary work as defined in the regulations and expressed further functional limitations such as postural, environmental, and mental limitations as exceptions from the general limitations contained in the regulatory definition. Id. at 6-7.

In her Reply Brief, Plaintiff argues that it is impossible to identify from the ALJ's decision how much sitting, standing, or walking Plaintiff can perform. (Reply 2). She argues based on Hodgson v. Colvin, No. 14-1106, 2014 WL 5511077, *4 (D. Kan. Oct. 31, 2014) that Herndon does not apply in a situation such as this where the ALJ does not make a specific finding of the amount of time a claimant can sit or stand. Id. at 3.

The ALJ discussed Plaintiff's exertional limitations in his RFC assessment. He found

> that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can only occasionally climb ladders, ropes, and scaffolds. She can frequently climb ramps and stairs. She can frequently balance, stoop, kneel, crouch, and crawl. She can have only occasional exposure to extreme heat and cold.

(R. 22). (bolding omitted). The ALJ discussed Plaintiff's allegations of symptoms, noting Plaintiff's assertions that her feet are numb and tingling, that she cannot fold laundry standing but has to sit, that she sometimes feels like she will fall, and that "[s]he can sit down or lay [sic] around for 45 minutes because of kidney pain." (R. 23). He summarized the report of Plaintiff's mother that Plaintiff has numbness in her legs, feet, and hands, and that she cannot walk or sit for long. Id.

The ALJ also summarized the medical evidence regarding Plaintiff's sitting, standing, and walking. He noted Plaintiff's report to Dr. BeLieu "that her exercise

6

included cardio, walking, and house cleaning." (R. 24-25). He noted that on May 28, 2014, Dr. Clark evaluated Plaintiff's numbness in her hands and feet, noting "intermittent episodes of pins and needles dysesthesias involving mostly her feet and toes and her hands to a lesser degree," and clumsiness, balance, and dexterity problems during these intermittent episodes. Id. at 25. He noted that on July 17, 2015 Dr. Clark found a steady gait and no involuntary movements. Id. at 26. He summarized Dr. Pakseresht's consultative examination report in which Plaintiff reported that she can sit for 45 minutes, stand for 15 minutes, and walk for 30 minutes, and in which the doctor concluded that Plaintiff's gait and station were stable and an assistive device is not required. Id.

The ALJ found that Plaintiff's statements about her symptoms are inconsistent with the medical and other record evidence (R. 27), and he discounted Plaintiff's mother's reports as inconsistent also--primarily because her statements that Plaintiff cannot be alone and cannot drive find no other support in the record. Id. at 28.

Plaintiff is correct that the regulation which defines sedentary work, 20 C.F.R. § 404.1567(a), does not specify the amount of time required for sitting, or for standing and/or walking in sedentary work. Rather, it defines a sedentary job as "one which involves sitting," and notes that "walking and standing are required occasionally." 20 C.F.R. § 404.1567(a). However, the regulations and rulings are based on the definition of "occasionally" as involving up to one-third of the time, and recognize that the full range of sedentary work requires about six hours of sitting in an eight-hour workday, with standing and/or walking occasionally, or about two hours in an eight-hour workday. Therefore, there is no error in the ALJ's failure expressly to state that he found Plaintiff

7

can sit about six hours in an eight-hour workday or stand and/or walk about two hours in an eight-hour workday. Moreover, although Plaintiff asserts a technical error in the ALJ's failure to state the sitting, and standing and/or walking requirements of sedentary work, she does not point to record evidence that she cannot meet those requirements. Therefore, even if the court were to assume an error in this regard, Plaintiff has shown no prejudice resulting from the alleged error.

## III. Mental RFC Assessment

Plaintiff points out that Dr. Kresser opined that "Plaintiff retained the ability to perform simple tasks in a low stress work environment" (Pl. Br. 26) (citing R. 77), and that the ALJ accorded Dr. Kresser's opinion significant weight. Id. (citing R. 27). She argues that the ALJ did not include the limitation to a low stress work environment in his hypothetical to the vocational expert (VE) or in the RFC assessed, and this failure is error because the ALJ's RFC assessment conflicts with Dr. Kresser's opinion to which the ALJ stated he accorded significant weight, and SSR 96-8p instructs that if the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why he did not adopt the opinion. West's Soc. Sec. Reporting Serv., Rulings 150 (Supp. 2017). The Commissioner argues that

> in finding that Plaintiff could handle the relatively low demands of simple, unskilled work with low social demands, the ALJ adequately addressed the stress and pressure associated with any job Plaintiff might perform. Moreover, the ALJ expressly concluded that the jobs suggested by the vocational expert were not generally high stress (Tr. 28). Thus, the ALJ reasonably contemplated limited stress in assessing the RFC.

(Comm'r Br. 14).

8

### A. The ALJ's Mental RFC Assessment

The ALJ found that Plaintiff "is able to understand, remember, and carry out simple instructions and perform routine repetitive tasks. She is limited to occasional interaction with the general public." (R. 22) (bolding omitted). The ALJ noted that Plaintiff underwent a consultative mental examination by Dr. Sheehan, a psychologist, and summarized her opinions that Plaintiff:

> was able to remember simple to moderately complex instructions but appeared quite tired and overall her concentration was poor. She was unlikely to persist at tasks or successfully concentrate during a normal workday. Her capacity to interact with others or adapt to the environment did not appear to be limited. It would be <u>best if she was in a low stress environment</u> without intense physical activity. The claimant could be expected to improve with psychotherapy.

(R. 26) (emphasis added).

The ALJ discounted Plaintiff's allegations regarding her symptoms because he found they were not consistent with the record evidence. He explained his evaluation of Dr. Sheehan's opinion, and the opinions of the state agency psychologists:

> The State agency psychologists, Paula Kresser, Ph.D. and Richard Maxfield, Ph.D., suggested that the claimant had moderate limits in activities of daily living, moderate limits in social functioning, moderate limits in persistence and pace, with no episodes of decompensation and/or that initially there was insufficient information to make a determination. These opinions are given significant weight as opinions from non-examining sources. They are experts in their field and experienced with the rules and regulations of the Administration. Even with additional evidence at the hearing level, the limitations sufficiently cover the condition of the claimant. The opinion of Dr. Sheehan is given some weight but less weight than Dr. Kresser and Dr. Maxfield. Dr. Sheehan's opinion is internally inconsistent with her findings. Although at the interview Dr. Sheehan noted that the claimant was able to sustain concentration within normal limits, and she had basic judgment and problem solving intact, Dr. Sheehan found that the claimant would not be able to sustain concentration and

9

>    persist to complete a normal work day. Dr. Sheehan found that the
>    claimant could interact with others and adapt to the environment. She still
>    believed, it would be best if the claimant worked in a low stress
>    environment without intense physical activity. Given that the claimant has
>    been limited to sedentary exertional work, she would not be required to
>    work with intense physical activity, and the jobs suggested by the
>    vocational expert are not generally high stress.

(R. 27-28) (citations to the record omitted).

### B. Legal Standard for RFC Assessment

The Commissioner has promulgated regulations regarding assessment of RFC. 20 C.F.R. § 404.1545-1546. In assessing RFC, the Commissioner is to consider a claimant's abilities to meet the demands of work despite her impairment(s). Id. at § 404.1545. The assessment is to be based upon all relevant medical and other evidence in the record and is to include consideration of the limitations caused by all the claimant's impairments, including impairments which are not "severe" as defined in the regulations. Id. at § 404.1545(a & e). The assessment is to consider physical abilities such as sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, and crouching; mental abilities such as understanding, remembering, and carrying out instructions; responding appropriately to supervision, co-workers, and work pressures; other abilities such as hearing and seeing; and the ability to tolerate various work environments. Id. § 404.1545(b,c,d); see also § 404.1521 (listing examples of basic work activities which may be affected by impairments). At the ALJ hearing level, it is the ALJ's responsibility to assess RFC. Id. § 404.1546(c).

SSR 96-8p, discussed above, also includes narrative discussion requirements for the RFC assessment. West's Soc. Sec. Reporting Serv., Rulings 149 (Supp. 2017). The

discussion is to cite specific medical facts and nonmedical evidence to describe how the evidence supports each conclusion, discuss how the Plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity she can perform. Id. The discussion must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved. Id. It must include consideration of the credibility of Plaintiff's allegations of symptoms and consideration of medical opinions regarding Plaintiff's capabilities. Id. at 149-50. If the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why he did not adopt the opinion. Id. at 150.

**C**     **Analysis**

Here, the ALJ clearly provided a narrative discussion in his RFC assessment. He cited specific medical facts and nonmedical evidence, he discussed how the Plaintiff is able to perform sustained work activities, and described the maximum amount of each work activity he found she can perform, and he included consideration of the consistency of Plaintiff's allegations of symptoms. However, his assessment of Dr. Kresser's and Dr. Sheehan's opinions created a conflict with his RFC assessment, and his explanation left an ambiguity and material inconsistency which he failed to adequately resolve.

The ALJ did not mention Dr. Kresser's opinion that Plaintiff "retains the ability to perform at least simple tasks in a low stress environment" (R. 77), and it may be that he missed it. Nonetheless, he clearly realized that at least Dr. Sheehan opined that "it would be best if the claimant worked in a low stress environment without intense physical activity," and attempted to resolve that conflict by finding that "the jobs suggested by the

11

vocational expert are not generally high stress." (R. 28). However, the record contains no evidence that the jobs at issue are <u>not</u> high stress, much less that they <u>are</u> low stress. And, that issue is a vocational issue which is not within the expertise of the ALJ. To be sure, that is the kind of finding which is within the jurisdiction of the ALJ, but because it is not within his expertise, there must be record evidence from which he may reach that finding. Consequently, the Commissioner's argument that "the ALJ reasonably contemplated limited stress in assessing the RFC" (Comm'r Br. 14), is unavailing because it is not premised on record evidence. Moreover, as Plaintiff suggests, the ALJ did not mention the opinions regarding low stress to the VE, so we cannot even assume that the jobs were based on such limitations.

While stress does not in itself reflect particular functional limitations, and must be expressed in the RFC in terms of functional limitations, this is not a case where the ALJ assessed Plaintiff with limitations which <u>in themselves</u> reveal and account for a low stress work environment. While the ALJ limited Plaintiff to simple instructions, routine repetitive tasks, and only occasional interaction with the public, by themselves those limitations encompass a broad range of jobs, some of which involve time pressures and other factors tending to produce mental stress on the worker. Therefore, it is necessary for the ALJ to explain the degree of stress to which Plaintiff is susceptible, and why the jobs at issue here do not produce that stress in this claimant. Almost certainly that explanation will require the services of a vocational expert to confirm jobs which produce stress within the capabilities of Plaintiff as found by the ALJ.

Remand is necessary to make the requisite findings in this case.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated July 25, 2018, at Kansas City, Kansas.

s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**